IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00261-MR

| | |
|---|---|
| TORRAN DONALD MEEKS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 14] and the Defendant's Motion for Summary Judgment [Doc. 16].

## I. BACKGROUND

On October 13, 2017, the Plaintiff, Torran Donald Meeks ("Plaintiff"), filed an application for a period of disability benefits under Title II of the Social Security Act (the "Act") and protectively filed an application for supplemental security income under Title XVI of the Act. [Transcript ("T") at 84-85, 96-97]. In both applications, the Plaintiff alleged an onset date of April 2, 2017. [Id.]. The Plaintiff's claims were initially denied on January 12, 2018, [id. at 145, 150, 154, 159], and again denied upon reconsideration on September 10,

2018, [id. at 165, 169, 173, 178]. On the Plaintiff's request, a hearing was held on October 15, 2019 before an Administrative Law Judge ("ALJ"). [Id. at 17]. On November 27, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 17-28].

On July 16, 2020, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind

2

Case 1:20-cv-00261-MR    Document 19    Filed 09/23/22    Page 2 of 16

might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports

his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of

4

the claimant.  Id. (citing 20 C.F.R. § 416.920).  If not, the case progresses to step two, where the claimant must show a severe impairment.  If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled.  Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P.  If so, the claimant is automatically deemed disabled regardless of age, education or work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.  Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work.  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the claimant can still perform his or her past work, then the claimant is not disabled.  Id.  Otherwise, the case

5

progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since April 2, 2017, the Plaintiff's alleged onset date. [T. at 19]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "spine impairments and complex regional pain syndrome." [Id. at 20]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC "to perform light work

as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he is limited to only frequent reaching in the left hand only, and he has no limitations in his right hand." [Id. at 21].

At step four, the ALJ identified the Plaintiff's past relevant work as delivery food driver, fast food manager, and tile installer helper. [Id. at 26]. However, the ALJ determined that the Plaintiff is unable to perform past relevant work as actually or generally performed. [Id. at 27]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform other jobs existing in significant numbers in the national economy, including routing clerk, price marker, and shipping and receiving weigher. [Id. at 27-28]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from April 2, 2017, the Plaintiff's alleged onset date, through November 27, 2019, the date of the ALJ's decision. [Id. at 28].

## V.   DISCUSSION[1]

As his sole assignment of error, the Plaintiff argues that "[t]he RFC lacks substantial evidence because [the] ALJ failed to properly evaluate the opinion of treating physician, Eric Steenlage, M.D. and failed to create a

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

7

logical bridge between the evidence and his finding of frequent use of the left upper extremity." [Doc. 15 at 4].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports his conclusion

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

When an ALJ is evaluating medical opinions, he "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[3] 20 C.F.R. § 404.1520c(a). The ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions" in the claimant's record. Id. § 404.1520c(b). The most important factors considered by the ALJ are supportability and consistency. Id. § 404.1520c(a). When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

---

[3] The previous regulation governing the Social Security Administration's evaluation of medical evidence—20 C.F.R. § 404.1527—was replaced by 20 C.F.R. § 404.1520c for all claims filed on or after March 27, 2017.

9

opinions or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(1). When considering an opinion's consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2). The ALJ will also consider the source's relationship with the claimant, the source's specialization, and other relevant factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." Id. § 404.1520c(c).

Regarding the opinion of Dr. Steenlage, the ALJ stated that:

> The undersigned is not persuaded by Dr. Steenlage's opinion (Ex. 6F): Dr. Steenlage opined that the claimant can never lift more than under 10 pounds, can use his left hand, fingers, and arms for only 10 percent of the workday, and would miss more than four days of work per month. He further opined that the claimant can sit for eight hours in an eight-hour workday and can stand or walk for eight hours in an eight-hour workday. Dr. Steenlage supported his opinion only with references to the claimant's complex regional pain syndrome diagnosis and side effects from the claimant's medications. Moreover, although his opinion is supported with his notes of treatment of the claimant, he did not examine the claimant after May 2017, and he provided his opinion in December 2017. Furthermore, his opinion is

10

> inconsistent with his inability to determine the cause of the claimant's symptoms, as well as with the claimant's demonstrations of full strength and range of motion in his left upper extremity, negative and mild diagnostic test results and imaging, and lack of complaints of medication side effects.

[T. at 25-26].

Here, the ALJ did nothing more than recite evidence in the record. The ALJ failed to explain how this evidence discounts Dr. Steenlage's opinion. For example, the ALJ did not explain why Dr. Steenlage's inability to determine the cause of the Plaintiff's symptoms after examining the Plaintiff in May 2017, [id. at 475], causes him to discount the ultimate opinion of December 2017, [id. at 494-95]. Further, the ALJ similarly failed to explain why the Plaintiff's test results, strength and range of motion, and lack of complaints of medication side effects are inconsistent with Dr. Steenlage's opinion that the Plaintiff has limitations related to his left upper extremity.

The ALJ's finding that Dr. Steenlage's opinion is unpersuasive and his ultimate conclusion that the Plaintiff can *frequently* reach with his left upper extremity are particularly vexing given the ALJ's discussion of the other medical opinions in the record. For example, the ALJ cited the State agency consultants' opinion that the Plaintiff "can perform light exertion, push and pull with the left upper extremity on a *prohibited to occasional* basis, [and] reach, handle, finger, and feel with the left upper extremity on a *prohibited to*

11

*occasional* basis. . ." [Id. at 25] (emphasis added). The ALJ found the State agency consultants' opinion to be persuasive and stated that "*their findings are consistent* with the claimant's symptomatic complaints, [and] demonstrations of limited functioning in his left upper extremity . . ." [Id.] (emphasis added). At the same time, the ALJ further concluded that:

> On the other hand, [the State agency consultants'] *findings are not consistent* with the claimant's demonstration of full strength and range of motion in his left upper extremity, demonstrations of full strength and range of motion in all other areas, negative diagnostic test results, mild or negative imaging of his spine, left upper extremity, and lower extremities, inconsistent use of medication, reports of improvement with medication and other treatment, prolonged periods without intensive or extensive treatment or earnest attempts to obtain such treatment, and lack of complaints of medication side effects. Based on this evidence, the undersigned finds that the claimant can perform light exertion, can frequently reach with the left upper extremity, and has no other limitations.

[Id.] (emphasis added).

The ALJ also evaluated the opinion of Dr. Burgess, stating that:

> The undersigned is persuaded by Dr. Burgess's opinion (Ex. 5F). Dr. Burgess opined, "[t]he claimant's ability to perform work-related activities such as bending, stooping, lifting, walking crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appears to be mildly and intermittently more moderate[ly] impaired.

> Dr. Burgess supported his opinion with findings from an examination of the claimant, and his opinion [is] *generally consistent* with the State agency physical consultants' findings and the evidence with which those findings are consistent . . .
>
> However, Dr. Burgess's opinion is supported by findings from only one examination, and he did not specify the claimant's maximum functional capacity with respect to the activities he identified. In addition, *his opinion is not entirely consistent* with the claimant's demonstrations of full strength and range of motion in his left upper extremity, demonstrations of full strength and range of motion in all other areas, negative diagnostic test results, and mild or negative imaging of his spine, left upper extremity, and lower extremities. Moreover, there is little objective evidence to support a finding that the claimant has difficulty hearing or speaking. Thus, the undersigned finds that the claimant can perform light exertion, can frequently reach with the left upper extremity, and has no other limitations.

[Id.] (emphasis added).

When evaluating the opinions if Dr. Steenlage, Dr. Burgess, and the State agency consultants, the ALJ repeatedly stated that those opinions were inconsistent with the Plaintiff's demonstrations of full strength and range of motion in his left upper extremity, his negative and mild diagnostic test results and imaging, and his lack of complaints of medication side effects. [See id. at 25-26]. However, the ALJ failed to explain why he concluded that the opinions of Dr. Burgess and the State agency consultants are persuasive despite that inconsistency but simultaneously listed that

13

inconsistency as a reason for concluding that the opinion provided by Dr. Steenlage is unpersuasive. Without further explanation, the Court is left to speculate as to why the ALJ concluded Dr. Steenlage's opinion is less persuasive than the medical opinions of Dr. Burgess and the State agency consultants.

Further, the ALJ failed to cite to any medical opinion that supports the RFC. Despite finding the opinions of Dr. Burgess and the State agency consultants to be persuasive, it appears as though the ALJ rejected the portions of those opinions where the physicians opined that the Plaintiff has limitations in using his left upper extremity. Instead, the ALJ concluded that the Plaintiff can frequently reach with his left hand. [Id. at 21, 25]. Throughout the ALJ's RFC assessment, he repeatedly recited evidence related to the Plaintiff's left upper extremity, including findings that the Plaintiff exhibited full strength and range of motion in his left upper extremity and the Plaintiff's lack of complaints regarding medication side effects. [Id. at 23-26]. However, the ALJ again failed to explain how this evidence discounts the physicians' findings that the Plaintiff is limited in his left upper extremity or how this evidence supports the ALJ's ultimate conclusion that the Plaintiff can *frequently* reach with his left hand. Accordingly, the Court is

14

Case 1:20-cv-00261-MR   Document 19   Filed 09/23/22   Page 14 of 16

left to guess as to how the ALJ concluded that the Plaintiff "is limited to only *frequent* reaching in the left hand only." [Id. at 21] (emphasis added).

The ALJ's decision "is sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (quoting SSR 96-8p).

A "reviewing court cannot be left to guess as to how the ALJ arrived at his conclusions." Mills, 2017 WL 957542, at *4. As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative

discussion of the evidence, as required by SSR 96-8p, explaining how he reconciled that evidence to his conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 14] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 16] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 22, 2022

Martin Reidinger
Chief United States District Judge